# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DR. CHIA L. LIU,

     Plaintiff,

v.

WATEC AMERICA CORP.,

     Defendant.

Case No. 2:07-CV-0863-KJD-RJJ

**ORDER**

Currently before the Court is Defendant Watec America Corp.'s ("Watec" or "Watec America") Motion for Summary Judgment (#52), filed March 17, 2008.  Plaintiff filed a Response (#56), on April 4, 2008, to which Defendant filed a Reply (#18), on April 18, 2008.

**I. Background**

On December 7, 1999, Watec America obtained federal registration from the United States Patent and Trademark Office ("USPTO") for the LCL Mark in international classification 009 and United States classifications 021, 023, 026, 036, and 038 for various photographic cameras and camera parts.  Since receiving the registration, Watec America has continued to use the LCL Mark to sell charged-couple device ("CCD") security cameras and related products.[1]

---

[1]Because Watec America continuously used the LCL Mark for over six (6) years, the USPTO issued a statement of incontestability for the registration of the LCL mark.

1    In October 2000, Watec Co. Ltd. ("Watec Japan") sued Watec America and its president (Dr.

2  Liu) for breach of an exclusive distributorship agreement and for infringement of other trademarks.

3  Watec Japan obtained a multi-million dollar judgment against Watec America and Liu, which

4  included a permanent injunction barring Watec America and Liu from using Watec Japan's

5  trademarks.  In March 2005, the Ninth Circuit affirmed the judgment.  See Watec Co. Ltd. V. Chia

6  Liu, 403 F.3d 645 (9th Cir. 2005).

7    Unable to satisfy Watec Japan's judgment, on December 5, 2003, Watec America filed a

8  Voluntary Chapter 11 Bankruptcy Petition in United States Bankruptcy Court for the District of

9  Nevada.  During the bankruptcy proceedings, Watec Japan and Liu filed competing plans for re-

10  organization.  Additionally, while the proposed plans were under the court's submission, Watec

11  Japan filed an adversary proceeding against Liu alleging fraudulent transfers and self-dealing during

12  his management of Watec America after it had petitioned for bankrutcy.  In an effort to resolve the

13  Watec Japan judgment and adversary proceeding against Liu, together with Watec America's re-

14  organization, Liu and Watec Japan entered into a Memorandum Agreement on March 31, 2005

15  ("2005 Memorandum Agreement") which set forth specific terms upon which all claims would be

16  settled between Liu, Watec, and other interested parties.

17    Under the 2005 Memorandum Agreement, Liu was required to transfer his interest in Lake

18  Las Vegas real property to Watec Japan.  Additionally, Watec America, as the reorganized debtor,

19  was to grant Liu an exclusive trademark license in the LCL Mark, including all common law rights

20  under the Mark for a period of two years.[2]  The Memorandum Agreement also provided that Watec

21  America was to retain such rights in the LCL trademarks as necessary to liquidate the company's

22  then-current inventory of LCL products, and that "[a]t the expiration of [the] two year period, the

23  reorganized debtor [Watec America] shall transfer ownership of the LCL trademark to Dr. Liu."

24  (Pl.'s Compl. Ex. B ¶ 2, Cabanday Decl. Ex. 11.)

25

26    [2]As set forth in the 2005 Memorandum Agreement however, the transfer of the trademark license to Dr. Liu did
"not include any trade secrets or their intellectual property held by Watec America."  (54-5 ¶ 2.)

1    Under the 2005 Memorandum agreement, Liu was to "assign his beneficial interest in and to

2  any professional negligence claim that he [then owned] against his attorneys to Watec. (Id. at ¶ 6.)

3  Also, pursuant to the 2005 Memorandum, Liu was to stipulate to a permanent injunction in favor of

4  Watec America barring him *inter alia* from using the trademarks or representing that he sold or was

5  in any way affiliated with Watec America.  (Id. at ¶ 8.)  Additionally, Watec Japan's proposed

6  creditor plan was to be entered without objection by Liu, and Liu's personal Chapter 11

7  reorganization plan was to be modified to reflect the provisions set forth in the 2005 Memorandum

8  Agreement.

9    On April 14, 2005, the United States Bankruptcy Court entered an Order Confirming Second

10  Revised Creditor's Plan of Reorganization (the "Confirmation Order") which incorporated the 2005

11  Memorandum Agreement between Liu and Watec.  Between April 1, 2005, and July 15, 2005, Watec

12  Japan made repeated requests to Liu that he fulfill the conditions of the 2005 Memorandum

13  Agreement.  Here, Defendant alleges that Liu refused to satisfy the conditions.  Additionally,

14  Defendant avers that it discovered that during this period of time, Liu took measures to sabotage

15  Watec America's operations, such as destroying computer databases, refusing to transfer bank

16  accounts, and withholding computer passwords necessary to access information and records. (See

17  Def.'s Mot. for Summ, J. at 4.)  As a result, on July 15, 2005, Watec Japan, and Watec America filed

18  another adversary proceeding against Liu and his family, asserting clams for breach of contract,

19  breach of the implied covenant of good faith and fair dealing, fraud, conversion, and other related

20  claims. (Id. at 5.)

21    As a result of the adversary proceedings, and upon order from the bankruptcy court, the

22  parties entered into mediation on May 15, 2006.  On May 16, 2006, the parties entered into a written

23  settlement agreement ("the 2006 Settlement") indicating that it had been entered into by the parties

24  "to settle all differences, disagreements and disputes that exist or may exist among them based on

25  any and all dealings with each other at any time prior to this Agreement. . . ."  (Def.'s Mot. for

26  Summ. J. at 5; Laxague Decl. Ex. 6.)

1    According to the 2006 Settlement, Liu and his family were to pay $1.25 million to Watec

2  America and Watec Japan jointly, over time, memorialized by a promissory note secured by real

3  property owned by Liu.  Watec Japan and Watec America agreed to dismiss the adversary

4  proceedings against Liu, and Liu waived the attorney-client privilege concerning his former

5  representation so that Watec America could pursue negligence claims. (Laxague Decl. Ex. 2 at ¶ 3.)

6  Additionally, Watec America and Watec Japan provided Liu *inter alia* a general release of all claims

7  "whether known or unknown, suspected or unsuspected, which it had now against [Liu] . . . from the

8  beginning of time to the execution of the agreement."  (Id. at  ¶ 6.)  Likewise, Liu and his family

9  provided Watec America and Watec Japan with an unconditional general release of all claims

10  "whether known or unknown, suspected or unsuspected, which it had now against [them] from the

11  beginning of time to the execution of this agreement."  (Id. at  ¶ 7. )

12    On June 29, 2007, Plaintiff Dr. Chia L. Liu ("Liu") filed a Complaint in this Court against

13  Watec America alleging five claims for relief for, (1) declaratory relief; (2) replevin/claim and

14  delivery; (3) specific performance; (4) federal trademark infringement; and (5) federal unfair

15  competition.[3]  Specifically, Plaintiff's Complaint seeks to enforce the 2005 Memorandum

16  Agreement, by averring that Watec has failed to comply with the 2005 Memorandum and subsequent

17  bankruptcy Court Confirmation Order by failing to reincorporate as "Reorganized Watec America

18  Corp.," and by failing to assign all rights, title, and interest in the LCL Mark to Dr. Liu on April 1,

19  2007.

20    On July 23, 2007, Defendant filed a Motion to Dismiss Plaintiff's second, fourth and fifth

21  claims for relief.  In response, Plaintiff conceded that his claims for federal trademark infringement

22  and unfair competition were premature and should be dismissed.  On October 16, 2007, the Court

23  issued an Order granting Defendant's Motion, leaving only Plaintiff's first and third claims, for

24

25    [3]Plaintiff's Complaint lists two "third claim(s) for relief", for specific performance and federal trademark
26  infringement, respectively.  Here, the Court will refer to Plaintiff's claim for specific performance as the third claim for relief.

1    declaratory relief and specific performance, respectively.  Specifically, Plaintiff's remaining claims

2    seek that the Court issue an Order declaring him the rightful owner of the LCL Mark and all

3    associated common law rights thereto, and compel Watec to perform its obligations under the 2005

4    Memorandum Agreement and assign/transfer the LCL Mark and all common law rights associated

5    with it, to him.

6            Here, Watec America's Motion for Summary Judgment seeks that the Court dismiss

7    Plaintiff's remaining claims under various theories.  Specifically, Watec America avers that Plaintiff

8    cannot succeed in his efforts to enforce the 2005 Memorandum because (1) Watec America was not a

9    party to the 2005 Memorandum; (2) because Liu materially breached the 2005 Memorandum,

10   thereby discharging any obligations Watec America may have had under it; and, (3) because Liu

11   released any obligation of Watec America under the 2005 Memorandum when he subsequently

12   entered the May 2006 Settlement Agreement.  Additionally, Watec avers that the assignment of LCL

13   trademark as outlined in the 2005 Memorandum is void on its face, because it constitutes an invalid

14   trademark assignment in gross.   Plaintiff, in opposition, contends that Watec America was a party to

15   the 2005 Memorandum because Liu executed the Agreement in his official capacity as "President of

16   Watec America Corp," and because Watec America, as the "reorganized debtor" received certain

17   benefits, and undertook certain obligations under the memorandum.  Liu also argues that he did not

18   breach the 2005 Memorandum agreement, but rather, attempted performance or was prevented from

19   performance by Defendant's actions.   Additionally, Liu argues that the 2006 Settlement Agreement

20   incorporated the 2005 Memorandum Agreement, including Watec America's obligation to assign the

21   trademark to Liu, and that the assignment of the LCL trademark as outlined in the 2005

22   Memorandum Agreement is valid.

23   **II.  Standard of Law for Summary Judgment**

24           Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

25   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

26   material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

**III. Analysis**

### A. Watec America and the 2005 Memorandum

Watec America avers that Plaintiff's claims for declaratory judgment and specific performance regarding the terms of the 2005 Memorandum Agreement must fail because Watec America was not a party to the 2005 Memorandum decision.  Defendant's argument fails.

1    The 2005 Memorandum Agreement was entered into between Dr. Liu on one hand, and

2    Watec Japan on the other, as a result of Watec America's bankruptcy proceedings, and in an effort to

3    resolve the underlying Watec Japan judgment and adversary proceeding against Liu, together with

4    the parties' competing plans for re-organization.  The Memorandum Agreement sets forth specific

5    benefits and obligations to be inherited by the "Reorganized Debtor," Watec America.  Among other

6    things, under the Agreement, as the Reorganized Debtor, Watec America, was transferred real

7    property owned by Dr. Liu.  Also in the Agreement, Liu assigned his beneficial interest in and to any

8    professional negligence claim that he then owned against his attorneys to Watec.  Additionally, by

9    Order of April 14, 2005, the Bankruptcy Judge in Watec's Chapter 11 proceeding confirmed Watec

10   Japan's Second Revised Creditor Plan, which identified Watec as the "Debtor" and  Watec Japan as

11   the "Plan Proponent", and recognized the 2005 Memorandum Agreement, stating that the parties had

12   "entered into a binding settlement agreement."  (Supplement to Mangano Decl. Ex. 1, Ex.1 at G.)

13   Without addressing Plaintiff's remaining arguments in this regard, the Court finds sufficient

14   evidence to create a genuine issue of material fact as to whether Watec America was a party to the

15   2005 Memorandum Agreement.

16   **B. Liu's Alleged Material Breach the 2005 Memorandum**

17   Defendant also argues that Plaintiff's claims for declaratory judgment and specific

18   performance under the 2005 Memorandum Agreement must fail because Liu materially breached the

19   Agreement.  Specifically, Watec America avers that Liu breached the agreement by (1) failing to

20   transfer the Lake Las Vegas property to Watec Japan; (2) failing to transfer his beneficial interest in

21   the negligence claims he had against his former attorneys; (3) failing to stipulate to the modification

22   of the Watec Japan judgment permanent injunction; and (4) failing to seek modification of his

23   confirmation plan in his personal bankruptcy so that Watec Japan would obtain clear title to the Lake

24   Las Vegas property.  Defendant, in opposition, contends that Watec's allegations that Liu breached

25   the 2005 Memorandum Agreement can be attributed to Watec's counsel's "lack of diligence in

26   reviewing and responding to Dr. Liu's counsel's correspondence." (Pl.'s Opposition at 14.)

1   Additionally, Liu alleges that Watec's counsel refused to negotiate agreeable content for the

2   stipulated permanent injunction, LCL license agreement, and other proposed addendums to the

3   Memorandum Agreement.  (Id.)

4        A material breach by one party to a contract may excuse further performance by another party

5   to the contract.  See Young Elec. Sign Co. v. Fohrman, 466 P.2d 846, 847 (Nev. 1970).  "[T]he party

6   who commits the first breach of a contract cannot maintain an action against the other for a

7   subsequent failure to perform."  Bradley v. Nev.-Cal.-Or. Ry., 178 P. 906, 908-09 (Nev. 1919).

8   However, "a party is not automatically excused from the future performance of contract obligations

9   every time the other party commits a breach; if the breach is relatively minor and not of the essence,

10  the plaintiff is still bound by the contract and may not abandon performance . . . ."  23 Williston on

11  Contracts § 63:3 (4th ed. 2007).

12       Whether there has been a material breach of contract turns upon the seriousness of the breach

13  and the likelihood that the injured party received substantial performance of the contract promise.

14  AMJUR CONTRACTS § 706.  Generally, a material breach occurs when there is a breach of an

15  essential element of the contract which induced the party to enter into it.  Further, the breach must go

16  to the substance of the contract, or defeat an essential purpose of the contract.  Id.

17       *1. Transfer of the Lake Las Vegas Property*

18       Watec's Motion for Summary Judgment avers that Liu materially breached the 2005

19  Memorandum Agreement by failing to transfer the Lake Las Vegas property to Watec Japan as

20  required in Section 1 of the Agreement, until Watec Japan filed an adversary proceeding against him.

21  Liu, in opposition, contends that he did not breach the 2005 Memorandum Agreement by failing to

22  transfer the property, but that Watec filed the adversary action against him without realizing that his

23  counsel had advised Watec's counsel on July 12, 2005, that the Grant Bargain and Sale Deed had

24  already been executed for the Lake Las Vegas property—prior to Watec's filing of the adversary

25  proceeding.

26

8

Additionally, Watec's counsel has admitted that the adversary proceeding was initiated by Watec with complete ignorance of the July 12, 2005 letter from Liu's counsel to Watec's counsel, regarding Liu's execution of the Grant, Bargain, and Sale Deed of the property.  Thus, the Court finds that Defendant's claim that Liu breached the 2005 memorandum Agreement by refusing to transfer the Lake Las Vegas property fails.

### 2. Transfer of Interest in Claims

Watec's Motion for Summary Judgment also avers that Dr. Liu breached the 2005 Memorandum Agreement by failing to transfer his beneficial interest in the legal malpractice/negligence claims he had against his former attorneys.   Liu, in opposition, contends that he did not execute a formal assignment of said claims to Watec because his counsel objected to certain terms in the draft agreement provided by Watec's counsel.[4]  Liu avers that his counsel sent a letter to Watec's counsel in July, 2005, stating his belief that the terms of the draft settlement agreement contained "superfluous" or "non-comtemplated" provisions that were not included in the terms of the 2005 Memorandum Agreement.  (Sylvester Decl. Ex D.)  Liu claims that Watec's counsel responded to his counsel's letter on August 10, 2005, yet never sent a revised draft that addressed the concerns he had expressed regarding in the draft agreement.  (See Sylvester Decl. ¶ 10.)

### 3. Modifications of Preliminary Injunction

Similarly, Watec's Motion for Summary Judgment also avers that Dr. Liu breached the 2005 Memorandum Agreement by failing to stipulate to the modification of the Watec Japan judgment permanent injunction.  Liu in opposition, avers that he did not fail to execute a modified permanent injunction, or in the alternative, that his nonperformance should be excused, because Watec "took no

---

[4]According to the letter, Liu's counsel objected to the terms of the draft agreement regarding, *inter alia,* the assignment of proceeds, trademark license agreement, stipulated permanent injunction, and the assignment for Dr. Liu's malpractice claims.  (See Sylvester Decl. Ex. D.)

1    efforts to raise the non-execution during the two year period following the 2005 Memorandum

2    Agreement.

3         Watec responds by asserting that it attempted to obtain the proposed injunction, including

4    sending drafts of the injunction to Liu's counsel.  According to Watec, Liu's counsel rebuffed the

5    demands and refused to provide a draft of his own.  (Def.'s Reply at 5.)

6         *4. Modification of Confirmation Plan.*

7         Watec also alleges that Dr. Liu has breached the 2005 Memorandum Agreement by failing to

8    seek modification of his confirmation plan in his personal bankruptcy proceedings so that Watec

9    Japan would obtain clear title to the Lake Las Vegas property.  Liu, in opposition, claims that he was

10   not obligated to modify his Chapter 11 bankruptcy plan of reorganization pursuant to the language of

11   the 2005 Memorandum Agreement, and representations made to the bankruptcy judge by Watec's

12   counsel.  Specifically, Liu points out that the 2005 Memorandum Agreement states "the confirmed

13   plan of reorganization in Dr. Liu's personal Chapter 11 case shall be modified to reflect the

14   provisions in this agreement."  (Cabanday Decl. Ex. 11.)  Liu claims that counsel for Watec

15   represented to the bankruptcy judge in the April 1, 2005, hearing that Watec would undertake the

16   obligation to modify Dr. Liu's confirmed creditor plan.  Additionally, Liu claims that the confirmed

17   plan of reorganization in Dr. Liu's personal bankruptcy action was filed by Watec Japan, and thus

18   that Watec is the party with standing to file a modified plan of reorganization. (Pl.'s Response at 16.)

19   Liu attempts to further buttress his argument by referencing correspondence from Watec's attorney

20   seeking feedback on a draft of the Revised Creditor Plan of Reorganization, and argues that Dr. Liu's

21   consent is not required for the modified plan of reorganization, and that Watec only sought

22   "feedback" as to the reorganization plan, and not that Liu present his own reorganization plan.

23         The Court finds both parties' claims in this regard to be somewhat disingenuous.  While Liu

24   argues that he was not obligated under the 2005 Memorandum Agreement to file a reorganization

25   plan, he fails to note that he never responded or provided feedback to Watec's proposed modified

26

reorganization plan.  (See Mangano Decl. Ex. C.)  Likewise, Watec claims that Liu has breached the 2005 Memorandum Agreement by failing to provide a modified reorganization plan, when its representation to the bankruptcy judge does not indicate that Liu alone would be responsible to file a confirmed creditor plan.  Further, Watec's statement to the bankruptcy court when asked if they were going to modify Mr. Liu's plan, was that the plan needed modification, but "not in any major respect." (Sylvester Decl. Ex. C. 8:21-24.)  Now, Watec argues that Liu's failure to file a modified plan is a material breach of the 2005 Memorandum Agreement.  Additionally, Liu's counsel's correspondence of July 12, 2005, to Watec's counsel clearly sets forth Liu's understanding of what was required of him under the 2005 Memorandum Agreement.  Nowhere in this correspondence does Liu's counsel mention the necessity of filing a modified reorganization plan.  Had Watec expected as much of Liu, it may have so indicated in its response, but at least was put on notice of Liu's understanding that he did not believe he was obligated to file a modified reorganization plan.

Accordingly, while recognizing that Liu's behavior in failing to respond or provide feedback regarding Watec's proposed reorganization plan is not a model of good behavior, the Court does not find his failure to file the plan altogether, to be a material breach of the Memorandum Agreement sufficient to preclude Watec's performance of its obligations under the Agreement.

### C. The May 2006 Settlement Agreement

Watec also seeks summary judgment of Liu's remaining claims by arguing that the 2006 Settlement Agreement contains a general and unconditional release in which Liu agreed that all issues, claims and liabilities Watec may have owed him, including any obligations under the 2005 Memorandum Agreement, would be absolved, and that such release bars Dr. Liu's claims for assignment of the LCL Mark.  Liu, in opposition, argues that the 2006 Settlement Agreement expressly integrated the terms and conditions of the 2005 Memorandum Agreement, including Watec's obligation to assign Liu the LCL Mark.

Section 7 of the 2006 Settlement Agreement contains a general release which states,

11

1
2
3
4

> **General Release by [Liu] to Watec America and Watec Japan.** Except to the extent provided herein, [Dr. Liu] . . . [does] hereby release and absolutely forever discharge Watec America and Watec Japan . . . of and from any and all claims, demands, debts, liabilities, obligations, accounts, and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, which [he] had or now [has] against the others, or any of them, from the beginning of time to the execution of this agreement.

5

6      (Lexague Decl. Ex. 6 ¶ 7.)  Additionally Section 10 of the 2006 Settlement Agreement contains an

7      integration clause which states,

8
9
10
11
12

> **Integration\Modification.** This instrument contains the entire agreement and understanding concerning the pending adversary proceedings, settlement thereof, and the subject matter therein, and supercedes and replaces all prior negotiations and agreements between Parties hereto, or any of them, whether written or oral, **with the exception of the Memorandum of Agreement executed by the Parties on March 31, 2005, as supplemented by the Parties on the record of the bankruptcy Court.** This Agreement may be changed, modified, or amended only by written instrument signed by all Parties.

13
14     (Lexague Decl. Ex. 6. ¶ 10.)( second emphasis added).  Watec's Motion anticipates Liu's argument

15     that the integration clause exempts the 2005 Memorandum Agreement from his release, and argues

16     that the language set forth in Section 10, the Integration\Modification clause, "merely memorializes

17     the fact that the parties previously entered the 2005 Memorandum."  (Def.'s Mot. for Summ. J. at

18     13.)  Additionally, Watec argues that its obligations under the 2005 Memorandum had already been

19     discharged as a result of Liu's alleged breach, and that the 2006 Settlement Agreement "does not in

20     any way resurrect those obligations."  Additionally, Watec argues that had Liu intended to exempt

21     the 2005 Memorandum Agreement [he] would have exempted it from the [general release].  Id.

22          The Court finds this argument unpersuasive.  The language of the 2006 Settlement

23     Agreement is clear and unambiguous.  Had the parties simply intended to memorialize that they had

24     entered into the 2005 Memorandum Agreement, they could have so stated.  Instead, the 2005

25     Memorandum Agreement is addressed in the Settlement Agreement's Integration clause, and

26     expressly indicates that the Settlement Agreement represents the entire agreement of the parties, and

1  replaces all prior negotiations and agreements between the parties "with the exception of the [2005

2  Memorandum Agreement].  Id.

3      Additionally, in correspondence to Liu's counsel dated April 11, 2007, Watec's Counsel

4  admits the "theoretical" survival of the 2005 Memorandum Agreement in relation to Plaintiff's claim

5  regarding the assignment of the LCL Mark.  Specifically, counsel states, "although the March 31,

6  2005 Memorandum of Agreement theoretically survived the May 16, 2006 post-confirmation

7  settlement between the parties [citing section 10 of the 2006 Settlement Agreement] the

8  Memorandum describes a litany required of (sic) documents and transactions which were designed

9  by the parties to work in tandem."  (Mangano Decl. Ex. C.)  The correspondence goes on to indicate

10  that Watec made efforts, including sending drafts of Liu's proposed reorganization plan and other

11  documents, to Liu's counsel, in effort to fulfill the 2005 Memorandum Agreement, yet never

12  received any "detailed edits or specific requested changes to those drafts."  Id.  This communication

13  is demonstrative that Watec's counsel believed the 2005 Memorandum Agreement had been

14  incorporated in the 2006 Settlement.

15      This evidence aside however, the Court finds that the 2006 Settlement Agreement is

16  unambiguous, and clearly integrates the 2005 Memorandum Agreement, exempting its conditions

17  from the 2006 Settlement which superceded and/or replaces all prior negotiations and agreements

18  between the parties.

19  **D. The Trademark Assignment**

20      Watec also seeks summary judgment on Liu's remaining claims by arguing that Liu has no

21  enforceable rights in the LCL Mark.  Particularly, Watec avers that the assignment of the LCL Mark,

22  as set forth in the 2005 Memorandum, is an assignment in gross, as it fails to assign any of Watec's

23  goodwill.

24  

25      [T]here are no rights in a trademark alone and . . . no rights can be transferred apart from the

26  business with which the mark has been associated.  Mister Donut of America, Inc. v. Mr. Donut, Inc.,

13

418 F.2d 838, 842 (9th Cir. 1969).  A sale of trademark rights apart from the good will symbolized by the trademark is known as an "assignment in gross" J. McCarthy, McCarthy on Trademarks and Unfair Competition § 18:17 (4th ed. 2009).

The assignment of registered marks is controlled by Section 10 of the Lanham Act, 15 U.S.C. § 1060, which provides that a registered mark "shall be assignable with the goodwill of the business in which the mark is used, or with part of the goodwill of the business connected with the use and symbolized by the mark".  Regarding the assignment of registered marks, the Supreme Court has stated,

> There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . . the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.

United Drug Co. v. Rectanus Co., 248 U.S. 90, 97–98 (1918), (citing Hanover Milling Co. v. Metcalf, 240 U.S. 403, 412–414 (1916).

Generally, "a transfer which is likely to work a deception upon the public will not be tolerated." See H.H. Scott, Inc. v. Annapolis Electroacoustic Corp., 195 F.Supp. 208 , 215 (D.C. Md. 1961).  There are substantial reasons of public policy, why a bare sale of a company's good will and trademarks apart from the business in which they are used should not be made and should not be held valid. Id. at 216.

"Nonetheless, assignments of marks separate from the underlying business have been upheld when the assignee "is producing a product . . . substantially similar to that of the assignor [such that] consumers would not be deceived or harmed" or when there is "continuity of management." Defiance Button Machine Co. v. C & C Metal Products Corp., 759 F.2d 1053 (citing Marshak, v. Green, 746 F.2d 927 (2d Cir. 1984). Thus, a trademark may be validly transferred without the simultaneous transfer of any tangible assets, as long as the recipient continues to produce goods of

14

1  the same quality and nature previously associated with the mark.  <u>Hy-Cross Hatchery, Inc. v.</u>

2  <u>Osborne</u>, 303 F.2d 947, 950 (C.C.P.A.1962).

3          Here, the Court finds reason to bar summary judgment on Plaintiff's remaining claims.  At a

4  minimum, the Court finds a dispute regarding whether Watec is required to assign a measure of good

5  will, with its assignment of the LCL Mark.  Specifically, the Court notes that Liu originally

6  conceived the LCL Mark, and established the goodwill associated with its use in connection with a

7  variety of electronic and CCD camera products.  Although Liu stated in deposition testimony that he

8  has no immediate plans to use the LCL Mark, (Cabanday Decl. Ex. 20 at 31:2–32:16; 50:9–21;

9  53:3–10) his Declaration states that he intends to use the mark on similar products after it is assigned

10  to him by Watec.  (Liu Decl. ¶¶ 3, 5, 13.)  As in <u>Defiance Button</u>, where the Court upheld a mark

11  assignment where the assignee was producing a product substantially similar to that of the assignor

12  consumers, and that would not deceive or harm the public, the Court is not persuaded by Defendant's

13  argument that Plaintiff does not have the capacity to do the same.

14          Evidence suggesting that Watec (at least at one time) believed Liu had the capacity to

15  continue producing substantially similar products, is found in the 2005 Memorandum Agreement,

16  which although enjoining Liu from association with Watec, permitted him to compete with the

17  company during the two year period provided for in the Memorandum Agreement.

18          The current case presents an interesting scenario, unlike most cases examining the question of

19  the validity of a trademark assignment.  Here, Defendants claim the assignment they agreed to in the

20  2005 Memorandum Agreement is invalid, and therefore unenforceable, and Plaintiff has failed to

21  bring a claim for breach of contract.  The majority of cases examining the question of trademark

22  assignments do so in retrospect, examining the actual transfer, assignment documentation, and/or

23  nature of the product produced by the assignor together with the product produced by the assignee.

24  Here, there has been no actual assignment of the LCL Mark, there is no document of assignment, and

25  there is no evidence regarding the types of product that may or may not be produced by Liu.

26

15

However, viewing Liu's testimony, together with the 2005 Memorandum Agreement as a whole, in the light most favorable to the nonmoving party, the Court finds that a material issue of fact exists as to whether Liu has the capacity to continue to produce goods of the same quality and nature previously associated with the Mark.

Accordingly, Defendant's Motion for Summary Judgment is denied.

**IV. Conclusion**

**IT IS HEREBY ORDERED** that Defendant Watec America Corp.'s Motion for Summary Judgment (#52) is **DENIED**.

DATED this 16th day of March 2009.

_____
Kent J. Dawson
United States District Judge

16